UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VINCENT BERTOLINO,                               )
                                                 )
                            Plaintiff,           )
                                                 )
                                                 )
   -against-                                    )
                                                 )
THE CITY OF NEW YORK; POLICE OFFICER             )        **15 Civ. 7327 (RJS)**
LUIS CASTILLO, Shield No. 20688; POLICE          )
OFFICER JORGE ROCA, Shield No. 17786;            )
POLICE OFFICER DIANA ESCALERA, Shield            )
No. 1699; POLICE OFFICER JOHN NUNEZ;             )
JOHN DOE #1; POLICE LIEUTENANT VITO              )
LABELLA; POLICE LIEUTENANT MICHAEL               )
GULINELLO; POLICE OFFICER "FNU" [FIRST           )
NAME UNKNOWN] LOPEZ; JOHN DOES; and              )
RICHARD ROES,                                    )
                                                 )
                        Defendants.          )
------------------------------------------------------------X


PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR RECONSIDERATION


1

**ARGUMENT**

Plaintiff respectfully moves, pursuant to Local Rule 6.3, for partial reconsideration from / refinement of the Court's September 15, 2016 Order (the "Order" – docket # 44).  In that Order the Court ordered Defendants to "produce documents in their possession pertaining to (1) [non-party witness Moises] Perez's activities on the evening of September 27, 2013, and (2) facts regarding Perez's mental stability and reliability that the Arresting Officers knew <u>or should have known</u> at the time of the arrest." (emphasis added).

Ms. Jacobs, Counsel for Defendants, informs me that she is presently working on obtaining a printout of the information concerning Mr. Perez that members of the NYPD would have been able to access on September 27, 2013 via a now-defunct NYPD computer system, and that she will be providing that to me shortly.  She also represents to me that she has determined that there was no such NYPD information relating to complaints that Mr. Perez was an emotionally disturbed person, or relating to Mr. Perez making a false statement (these categories were chosen unilaterally by opposing counsel, with no input from me).  Despite my request, however, she has not described for me what the document is (discussed in the parties' August 19, 2016 joint discovery letter, docket # 42) from which she had gleaned Mr. Perez's old apartment number[1], or what information it contains, nor has she described for me precisely what City documents the Defendants could have accessed on the date of the incident.

---

[1] As I set forth in the 8/19/16 application, Defendants originally gave me an address for Mr. Perez without an apartment number at a multi-residence apartment building, and service was rendered impossible thereby.  I then asked opposing counsel for his apartment number.  Opposing counsel in response emailed me and provided me an apartment number that she said she had obtained through further investigation.  When I asked for the source of this information (as it should have been provided to me initially), opposing counsel stated by email dated July 22, 2016 that "[h]e

2

Plaintiff respectfully requests that the Court require opposing counsel to produce all NYPD records relating to Mr. Perez, and to describe for me and for the Court precisely what documents exist within the City's possession concerning Mr. Perez - so that I and the Court can gauge whether these materials and the information contained therein should have been known by the Defendants when Perez's report of Plaintiff's alleged masturbation was relied upon by the Defendants, and Plaintiff was arrested as a result thereof.  Leaving this "should have known" question solely to counsel for Defendants is neither fair nor practicable, and is not in keeping with the wide scope of discovery under Fed.R.Civ.P. 26(b)(1).  A number of the factors that a Court must consider in assessing proportionality (described by the Court on page 2 of the Order) militate in favor of requiring the production of, and the precise description of, these documents as requested.

Concerning "the importance of the issues at stake in this action," this is a case arising from this Court's original jurisdiction concerning the deprivation of Plaintiff's most fundamental constitutional rights.  The importance of the issues - both for the Plaintiff himself and for the public more generally - in this case could not be higher.  *See*, e.g., Banks v. Yokemick, 177 F. Supp. 2d 239, 260-61 (S.D.N.Y. 2001):

> By contrast [to non-constitutional tort law], § 1983's dominant focus is more expansive. As discussed above in the context of Banks's loss of life claim, the statute protects a wider breadth of both private rights and public interests accruing to the victim and the larger society. Insofar as § 1983 seeks to calibrate a balance of values, it appears to favor fairness first for the interest of the injured party, rather than promoting an economic equilibrium that tips the benefit of the doubt and resulting equities toward the wrongdoer. In this respect, the point of departure that the § 1983 inquiry compels is not what constitutes fairness from the economic

---

provided this information to the NYPD in an unrelated matter.  I believe it is self-reported, so I can't say for certain that it is true." (emphasis added).

> perspective of a particular defendant but from what is equitable under the circumstances for the injured party in order to vindicate his civil rights and deter and/or punish the offender to avert future constitutional deprivations.
>
> This expression of priorities is reflected in the legislative history of § 1983, which demonstrates that the law was enacted to "'[create] a species of tort liability in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the constitution." Carey, 435 U.S. at 253 (quoting Imbler v. Pachtman, 424 U.S. 409, 417, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976). Thus, § 1983 addresses constitutional principle that reach profoundly to the core of our notion of justice and underpin our legal system's groundings on the rule of law. To these ends, the statute targets official misconduct only. By placing such offenses on a higher plane, elevating their gravity to the scale of constitutional deprivations, Congress gave expression to a matter reflecting unique public policy priority and value. In essence, it recognized that permitting inherent contradiction to exist in enforcing the governing principles upon which our nation is grounded corrodes and imperils our social values and justice system. In this regard, there is perhaps no more profound contradiction, or more fundamentally harmful personal injury than when deprivations of civil rights are inflicted by the state itself: when constitutional offenses are committed, through actions directly authorized or taken under the color of law, by the very government agents whose public duties encompass protecting individual rights, promoting social values and promulgating fair and just behavioral norms. See Owen v. City of Independence, 445 U.S. 622, 651, 63 L. Ed. 2d 673, 100 S. Ct. 1398 (1980) ("How 'uniquely amiss' it would be, therefore, if government itself -- 'the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment and the setting of worthy norms and goals for social conduct" -- were permitted to disavow liability for the injury it has begotten.") (quoting Adickes v. Kress & Co., 398 U.S. 144, 190, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (opinion of Brennan, J.).

(emphasis added). *See also*, King v. Conde, 121 F.R.D. 180, 195 (E.D.N.Y.1988) (quotations

and citations omitted):

> The interest that without doubt looms largest in these cases is the public interest in giving force to the federal civil rights laws. Through constitutional amendment and national legislation the people have made it clear that the policies that inform the federal civil rights laws are profoundly important[.] Lawsuits brought under 42 U.S.C. § 1983 require special attention to full disclosure:
>
> > Each citizen acts as a private attorney general who takes on the mantel of the sovereign, guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our

governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

Concerning "the parties' relative access to relevant information," the asymmetry in the parties' relative access to this information concerning Mr. Perez is total, and was at the heart of the 8/19/16 application, and is at the heart of the instant motion for reconsideration / refinement. It must be noted that on September 8, 2016 (the day before Plaintiff was deposed in this matter) opposing counsel made a supplemental discovery production to me consisting of four NYPD Complaint Reports relating to other, unrelated complaints that were made with regard to Plaintiff. The same can and should certainly be done with regard to NYPD Complaint and Arrest Reports concerning Mr. Perez (either where he is the complainant, or the person complained about), and such should be ordered to be produced by the Court as an aspect of basic fairness. There is simply no good reason, for example, why opposing counsel should be privy to the documents and information about Mr. Perez described in Footnote 1, *supra*, and I should not be. Although Mr. Perez is a non-party, he is a particularly important non-party (as the Court recognized on pages 3-4 of the Order), as it was solely on the basis of information supplied by him that the Defendants arrested and humiliated Plaintiff. As noted in the 8/19/16 joint letter, I have no objection to an appropriate protective order being put in place with regard to these potentially sensitive records, and will not show them to anyone except for Plaintiff and any expert witness(es) (which are not, in any event, presently anticipated). Contrary to opposing counsel's entirely baseless assertion in the 8/19/16 joint letter, I have no interest whatsoever in

5

"smear[ing]" Mr. Perez, but I do need to obtain discovery about him (and, hopefully, depose him if he can be found) in order to reasonably advance Plaintiff's case.

Further, Defendants should be required to produce all NYPD documents concerning Mr. Perez, and to describe with particularity all documents in the City's possession concerning him, as discussed *supra*, as these documents may also contain other information which will help me to track down Mr. Perez so as to serve him with a subpoena. As just one example (there are any number of others that cannot be known without actually seeing the documents) of possibly useful information in that regard: if there are other NYPD Complaint or Arrest Reports concerning Mr. Perez that also involve someone who knows him, I can contact and / or subpoena that person(s) in order to find Mr. Perez. As described in the 8/19/16 joint letter, I am otherwise presently at a dead end in terms of trying to find him, and need new leads such as may be contained in these documents in order to further search for him. Although Your Honor did describe my two unsuccessful attempts to serve Perez with a subpoena in its Order, the Court did not address this aspect of these documents' importance to Plaintiff in any way in the Order, or in the partial relief granted to Plaintiff in the Order.

## CONCLUSION

Plaintiff appreciates the Court's attempt to balance Plaintiff's need for discovery in this case with Mr. Perez's privacy considerations in the 9/1/16 Order. However, for the reasons set forth above, the Court appears to have overlooked / to not have fully considered certain important aspects of this issue - and the Court of course could not have considered opposing counsel's later, 9/8/16 production of the four unrelated Complaint Reports concerning Plaintiff - and should grant reconsideration as requested.

Dated:     New York, New York
           September 15, 2016

_____/S/_____
JEFFREY A. ROTHMAN, Esq.
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980